**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jarold Bert Noe, as assignee of
Chuck M. Bergerson,

Plaintiff,

v.

American Family Mutual Insurance Co.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1217 ADM/SRN

---

James Martin, Esq., Gislason, Martin & Varpness, P.A., Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Eric Magnuson, Esq., and Leondra M. Hanson, Esq., Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, Minnesota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

On April 24, 2002, the undersigned United States District Judge heard Defendant American Family Mutual Insurance Company's ("American") Motion for Summary Judgment [Doc. No. 19]. American seeks summary judgment, arguing there is insufficient evidence that its rejection of a settlement offer within its insured's policy limit was made in bad faith. For the reasons articulated below, American's Motion is granted.

## II. BACKGROUND[1]

When a jury awards an unexpected amount of damages in a wrongful death action, the event may reveal that attorneys are not prescient, and may also prompt a lawsuit for bad faith failure to settle. Charles Bergerson ("Bergerson") and Jarold Bert Noe ("Noe") were co-

[1] As required in the summary judgment context, the facts are reviewed in the light most favorable to Plaintiff.

FILED JUL 17 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JUL 17 2002
DEPUTY CLERK

defendants in the underlying tort lawsuit. This bad faith action arises out of an assignment from Bergerson to Noe of bad faith claims he may have against American.

On October 7, 1994, Dennis Voigt sustained fatal injuries when his wheelchair fell down a set of stairs at the American Family Insurance office building in Rochester, Minnesota. There were no witnesses to the accident. Bergerson, a American Family agent, owned the building. He also was an American policyholder and was insured up to a $300,000 policy limit. Prior to the incident, Bergerson had received a code violation notice from the City of Rochester regarding the handicap access ramp to his building.

The Trustee for Voigt's next of kin ("Trustee"), represented by Charles James Suk, commenced a wrongful death lawsuit against Bergerson, Noe, and a concrete subcontractor.[2] American retained Peter Sandberg to defend Bergerson. Noe, d/b/a Noe Builders, was insured by Western National Insurance Company ("Western")[3] with a $1.5 million policy limit. Western retained George Vogel to represent Noe's interests. Mark Lapham, Western's Litigation Manager, supervised the file and made settlement decisions.

During the litigation preceding the trial, the parties evaluated their respective liability. Vogel believed that the liability of all defendants could not be clearly established because the Trustee was relying only on the accident itself to prove causation. Vogel wrote, "Lapham has indicated that he does not believe we should admit liability in this matter because it is our belief

[2] The subcontractor entered into a settlement agreement in accordance with *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963).

[3] Although Noe is captioned as the assignee, Western negotiated and obtained the assignment agreement from Bergerson, Western controls the litigation, and Western will benefit from any recovery. By Order of April 5, 2002, Magistrate Judge Susan Richard Nelson denied American's Motion to Name the Real Party in Interest [Doc. No. 18].

that Dennis Voigt was contributorily negligent." Letter from Vogel to Sandberg of 10/23/97. Vogel estimated Bergerson's liability at 25-50%, Noe's liability at 10-25%, the subcontractor's liability at 10-25%, and Voigt's own fault as high as 25%. *See* Vogel Dep., at 16-19.

The defendants evaluated the case for settlement in the $100,000-$150,000 range. *See* Vogel Dep., at 52, 57; Sandberg Dep., at 60; Hanson Aff. Ex. 13 (Memo from Lapham to File of 5/6/97); *Id.* Ex. 14 (Letter to Bergerson from Sandberg of 5/6/97); *Id.* Ex. 16 (Letter to Sandberg from Vogel of 10/23/97). During the pretrial litigation, Vogel wrote, "[w]e believe that this matter should settle for $100,000.00 although I have received an indication from Attorney Jim Suk that he would like $175,000.00 in this case." Hanson Aff. Ex. 16 (Letter to Sandberg from Vogel of 10/23/97). Noe was willing to contribute $20,000 towards this settlement amount. *Id.* Sandberg estimated the settlement range of the case was between $125,000 and $150,000, and that $175,000 would be on the high end. *See* Sandberg Dep., at 59-60. Sandberg never believed damages for the case would exceed $300,000. *Id.* at 61. In a pretrial letter, Sandberg expressed his belief that the claim was "worth about $150,000." Hanson Aff. Ex. 26 (Letter to Birnbaum from Sandberg of 10/25/96).

The defense attorneys believed the decedent's family and financial difficulties significantly reduced the value of the case. Voigt and his estranged wife were in the process of divorce. Voigt was not earning significant money at the time of his death, garnering approximately $12,000 per year. He gave $2,500 to $3,500 each year to his estranged wife and three children. *See* Hanson Aff. Ex. 19, at 5. Voigt operated his own household at a $988.00 per month deficit. *See* Hanson Aff. Ex. 20, at 2. Defense counsel agreed that it would be difficult for the Trustee to show a significant loss of economic support as a result of Voigt's death. *See*

Vogel Dep., at 52-54; Hanson Aff. Ex. 12 (Letter to Lapham from Vogel of 02/27/97); *Id.* Ex. 25 (Letter to Sandberg from Birnbaum of 02/21/96).

On May 6, 1997, the parties mediated the case before Robert Hauer. *See* Hanson Aff. Ex. 15 (Letter to Judge Ring from Hauer of 5/08/97). Prior to this mediation, the Trustee had demanded $400,000. The defendants made a collective offer of $75,000. *Id.* During the mediation, the Trustee's demand decreased to $260,000, where it remained until the trial. *Id.* Although the Trustee's demand was within the defendants' policy limits, defense counsel rejected the settlement offer on their belief that a jury would not award damages exceeding the $260,000 demand. *See* Sandberg Aff. ¶¶ 4-7.

The Trustee's action was tried to a jury before the Honorable Debra A. Jacobson in Olmsted County, Minnesota. At the conclusion of the trial, the jury awarded $1,011,440.06 in damages, finding Bergerson 85% liable and Noe 10% liable for the plaintiff's injuries. Judgment for the full amount was entered jointly against Bergerson and Noe, pursuant to Minnesota law. The defendants both brought post-trial motions seeking to have the verdict overturned and/or the damages reduced. *See* Hanson Aff. Exs. 19 & 20. On Noe's behalf, Vogel argued that the damages were motivated by passion and prejudice and asked the court to reduce the verdict to $150,000, or alternatively, grant a new trial. Hanson Aff. Ex. 20. The court denied these post-trial motions, noting that the verdict was "high," but not shocking to the conscience of the court. Hanson Aff. Ex. 21, at 4. Eventually, the parties settled for $760,000; American contributed $360,000 on behalf of Bergerson and Western contributed $400,000 on behalf of Noe.

As part of the settlement agreement, Bergerson agreed to assign any and all bad faith

claims he might have against American to Western and Noe. Hanson Aff. Ex. 2 ¶ 4; *Id.* Ex. 1. Noe brought this action for bad faith failure to settle within the policy limits. American now seeks summary judgment.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### A. Bad Faith

Under Minnesota law, a liability insurer, after taking control of settlement decisions for claims against its insured, may become liable in excess of its undertaking under the terms of the policy if it fails to exercise "good faith" in considering offers to settle the claim for an amount within the policy limits. *Short v. Dairyland Ins. Co.*, 334 N.W.2d 384, 387 (Minn. 1983); *Iowa Nat'l Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 371 N.W.2d 627, 628 (Minn. App. 1985). Here, Noe claims American breached its duty of good faith to settle within Bergerson's policy limits. The Minnesota Supreme Court held:

> [An] insurance company could have validly declined the offer of settlement if good faith existed on either of two grounds. First, if it in good faith believed that its insured was not liable. Second, even if liability of its insured was certain, if it believed in good faith that a settlement at the proposed figure which it was required to contribute was greater than the amount the jury would award as damages.

*Boerger v. American General Insurance Co.*, 100 N.W.2d 133, 135 (1959). Thus, an insurer may breach its duty of good faith if the insured is clearly liable, the insurer refuses to settle within the policy limits, and the decision not to settle within the policy limits is made in bad faith and is not based upon reasonable grounds to believe that the amount demanded is excessive. *Iowa Nat'l Mut. Ins. Co.*, 371 N.W.2d at 628-29. A mere mistake in judgment by the insurer is insufficient. *Peterson v. American Family Mut. Ins. Co.*, 160 N.W.2d 541, 544 (1968). Noe must show that American acted in bad faith by rejecting an offer of settlement within the policy limits. *Id.*

American moves for summary judgment based on the dearth of evidence indicating that it refused to accept the Trustee's settlement demand in bad faith. American has presented evidence suggesting that its evaluations and decisions regarding the Trustee's case were founded on a reasonable basis and motivated by good faith. The analyses written contemporaneously with the pretrial litigation all indicate that all defense counsel believed the settlement value of the Trustee's case was in the range of $100,000 to $150,000. *See* Hanson Aff. Ex. 26 (Letter to Birnbaum from Sandberg of 10/25/96); *Id.* Ex. 13 (Memo from Lapham to File of 5/6/97); *Id.* Ex. 14 (Letter to Bergerson from Sandberg of 5/6/97); *Id.* Ex. 16 (Letter to Sandberg from Vogel of 10/23/97). Defense counsel rejected the Trustee's settlement demand and took the case to trial, after which the jury returned a verdict in excess of one million dollars. Hindsight and Tuesday morning quarterbacking are not measures of bad faith. *See Peterson*, 160 N.W.2d at 544.

Noe, although conceding that a mere error in judgment by American does not constitute

bad faith towards its insured, argues there is a factual question as to whether American adequately fulfilled its duty to keep Bergerson informed of the settlement negotiations. *See* Pl. Mem. in Opp'n., at 9. The evidence of record indicates that Sandberg communicated with Bergerson throughout the litigation and settlement negotiations, Bergerson was aware of his policy limits, and Bergerson did not believe any jury award would exceed his policy limit. *See* Bergerson Aff. ¶¶ 4-5, 7; Sandberg Aff. ¶¶ 3-5. Noe may not rest on "mere allegations or denials," but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Attempting to create a factual issue for trial, Noe submits the opinion of Attorney Richard J. Thomas as evidence of American's bad faith. In his opinion letter, Thomas explains why American's decision to reject the Trustee's $260,000 demand was wrong (in hindsight), and concludes that American acted in bad faith. *See* Thomas Aff. Ex. B, at 3-5. However, his opinion fails to explain how the facts rise to the level of bad faith. *See Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1339-40 (7th Cir. 1989) (holding that expert affidavit containing "nothing but conclusions" failed to establish factual issue); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (same). Nor does the Thomas opinion show that American lacked reasonable grounds to believe the amount demanded for settlement was excessive. An error in judgment does not constitute bad faith. *Peterson*, 160 N.W.2d at 544. "The gravamen of an insured's claim for bad faith in refusing to settle is a showing that the insured had demanded the insurance company accept an offer within the policy limits and that the company was arbitrary in refusing to do so, subverting the insured's interests to its own." *Id.*

Noe may have presented a *post hoc* analysis of why American's settlement decisions were mistaken, but he has failed to identify evidence on which a jury could reasonably find bad faith. *Anderson*, 477 U.S. at 252.

Lapham, Vogel, Sandberg, and Suk were negotiating settlement between the defendants' $75,000 offer and the Trustee's $260,000 demand. The record demonstrates that Western's evaluations of the Trustee's case were similar to American's throughout the pretrial litigation. No one reasonably expected a verdict in excess of Bergerson's policy limit of $300,000. Juries occasionally deliver verdicts exceeding anyone's expectations. There is insufficient evidence of bad faith on the part of American to create a genuine issue of fact. Noe "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Summary judgment is granted.

**B. Negligence**

Noe also alleges a tort claim for negligence, based on the fact that American failed to settle the Trustee's claim within Bergerson's policy limits under the insurance contract. Under Minnesota law, a party is not entitled to recover tort damages for a breach of contract, unless it is an "exceptional case" where the breach of contract "constitutes or is accompanied by an independent tort." *Wild v. Rarig*, 234 N.W.2d 775, 789-80 (Minn. 1975). "While the Minnesota courts have recognized that an insurer owes its insured a duty of good faith, such duty has never been expressed as a tort duty." *Cherne Contracting Corp. v. Wausau Ins. Co.*, 572 NW. 2d 339, 343 (Minn. 1997). Any responsibility to use good faith in settlement negotiations exists only because of the parties' relationship under the insurance contract. *Id.* American has no duty

independent of the contract. *See Larson v. Anchor Cas. Co.*, 82 N.W.2d 376, 387-88 (Minn. 1957); *Northfield Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 545 N.W.2d 57, 63 (Minn. App. 1996) (noting that bad faith standard, not negligence standard, applies to claims against insurer for breach of duty). Summary judgment is granted on the negligence claim.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that American's Motion for Summary Judgment [Doc. No. 19] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: July 17, 2002